IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HAIR CLUB FOR MEN, LLC, a Delaware )
limited liability company,         )
                                   )   2:07-cv-546-GEB-KJM
                Plaintiff,         )
                                   )
     v.                            )   ORDER
                                   )
ELITE SOLUTIONS HAIR ALTERNATIVES, )
INC., a California corporation;    )
DANIELLE EATON, an individual; and )
TINA MOSKAL, an individual,        )
                                   )
                Defendants.        )
_____)

        Plaintiff's motion for a preliminary injunction was argued on April 4, 2007. Plaintiff was granted an ex parte temporary restraining order ("TRO") on March 22, 2007.[1] Plaintiff seeks a preliminary injunction enjoining its former employees, Defendants Eaton and Moskal ("the stylists"), from soliciting Plaintiff's customers, servicing Plaintiff's former customers whom the stylists allegedly solicited to be customers of Defendant Elite Solutions (the

---

[1] Even though Defendants received notice of the TRO motion and when it was scheduled for hearing, they neither responded to the TRO motion nor appeared at the scheduled TRO hearing.

1

stylists' new employer) and disclosing and/or retaining in their possession Plaintiff's customer list.  Plaintiff seeks a preliminary injunction enjoining Defendant Eaton from working within a twenty mile radius of Plaintiff's business as a hair restoration stylist.[2]  Plaintiff also seeks a preliminary injunction enjoining Elite Solutions from disclosing Plaintiff's customer list.  Plaintiff's complaint alleges breach of contract claims against the stylists for their alleged breach of non-competition agreements, and claims of misappropriation of trade secrets and unfair competition against all Defendants.  (Compl. ¶¶ 43-76.)

BACKGROUND

The stylists were previously employed by Plaintiff as hair restoration stylists.  (Ward Decl. ¶¶ 3, 4.)  As part of this employment the stylists signed a non-competition agreement with Plaintiff.  (Id.)  The non-competition agreement which Eaton signed prohibited her from directly or indirectly competing with Plaintiff's business within a radius of twenty miles of Plaintiff's business establishment.  (Compl. Ex. 1 at ¶ 1(b).)  The stylists quit their jobs at Plaintiff's business in January 2007, following which they began working for Defendant Elite Solutions.  (Id. ¶¶ 5,6; Long Decl. ¶¶ 7, 8.)

Plaintiff submits declarations from customers who declare the stylists solicited them to leave Plaintiff's business and become customers of Elite for hair replacement services.  (Faris Decl. ¶ 4; Ryan Decl. ¶ 5.)  In addition, Plaintiff submits declarations from

---

[2] The parties appeared to agree at the preliminary injunction hearing that Elite Solutions is approximately fifteen miles from Plaintiff's business location.

2

1 some of Plaintiff's employees who declare that either Plaintiff's
2 customers or the stylists informed them that the stylists contacted
3 Plaintiff's customers and asked the customers to leave Plaintiff's
4 business and to start receiving hair replacement services at Elite.
5 (Litwinenco Decl. ¶ 2; Rencehausen Decl. ¶ 2; Cate Decl. ¶¶ 3, 6, 8,
6 10-11.)
7 　　　　Defendants submit declarations from some of Plaintiff's
8 former customers who now receive hair replacement services at Elite.
9 Many of these customers declare the stylists announced that they were
10 now working at Elite and "did not attempt to solicit . . . business
11 for Elite Solutions." (Provan Decl. ¶ 4; Nelson Decl. ¶ 4; Rutz Decl.
12 ¶ 3; Salmone Decl. ¶ 4; Parker Decl. ¶ 3; Lewis Decl. ¶ 3; Vernarecci
13 Decl. ¶ 5; Lenci Decl. ¶ 4; Goodwin Decl. ¶ 3; Frey Decl. ¶ 5; Garcia
14 Decl. ¶ 3; Pendelton Decl. ¶ 3; Morgan Decl. ¶ 4; Eure Decl. ¶ 5;
15 Kingsbury Decl. ¶ 5.)
16 　　　　　　　　　　　　　　　DISCUSSION
17 I.   Standard
18 　　　　To obtain a preliminary injunction, Plaintiff must show
19 "either a likelihood of success on the merits and the possibility of
20 irreparable injury, or that serious questions going to the merits were
21 raised and the balance of hardships tips sharply in its favor."
22 Immigrant Assistance Project of the L.A. County Fed'n of Labor v. INS,
23 306 F.3d 842, 873 (9th Cir. 2002).
24 II.  Past Misappropriation
25 　　　A.   Serious Questions Going to the Merits
26 　　　　Defendants argued at the April 4 preliminary injunction
27 hearing, that notwithstanding Plaintiff's declarations indicating
28 Defendants engaged in improper solicitation, Defendants merely

1  announced their job change, which does not constitute improper
2  solicitation, and only contacted customers who had given the stylists
3  their telephone number.  Plaintiff countered that customer contact
4  information the stylists received while at Plaintiff's business was
5  property that belongs to Plaintiff.
6        Defendants also argue they have discredited Plaintiff's
7  declarations which supports Plaintiff's position on improper
8  solicitation through the evidence Defendants submitted.  But
9  Defendants neither controvert Jim Ryan's declaration that he did not
10 give his phone number to Defendants to enable Defendants to contact
11 him about transferring his business to Elite Solutions, nor his
12 averment that Moskal solicited him to leave Plaintiff's business.
13 (Ryan Decl. ¶¶ 5-8.)
14        Misappropriation is the:
15        Disclosure or use of a trade secret of another
          without express or implied consent by a person who
16        . . . At the time of disclosure or use, knew or
          had reason to know that his or her knowledge of
17        the trade secret was . . . Acquired under
          circumstances giving rise to a duty to maintain
18        its secrecy or limit its use.
19 Cal. Civ. Code § 3426.1.
20        Defendants do not dispute that Plaintiff's customer list
21 constitutes a trade secret which they agreed to not disclose.  (Defs.'
22 Opp'n at 6:19-20.)  However, Defendants argue the stylists did not
23 misappropriate Plaintiff's customer list by merely announcing their
24 job change to customers even though they used phone numbers they
25 received during the course of their employment with Plaintiff.  (Id.
26 at 6:20-22, 7:26-8:4.)  At the hearing, Plaintiff argued that even if
27 customers provided their contact information to the stylists, since
28

4

they received it by virtue of the stylists' employment, the stylists were not permitted to initiate contact with the customers.

"Merely informing customers of one's former employer of a change of employment, without more, is not solicitation. Neither does the willingness to discuss business upon invitation of another party constitute solicitation on the part of the invitee." Hilb, Rogal & Hamilton Ins. Servs. v. Robb, 33 Cal. App. 4th 1812, 1821 (1995). "[T]he right to announce a new affiliation, even to trade secret clients of a former employer, is basic to an individual's right to engage in fair competition." Id. "However, misappropriation occurs if information from a customer database is used to solicit customers." MAI Sys. Corp. v. Peak Computer, 991 F.2d 511, 521 (9th Cir. 1993)  In addition, "[e]verything which an employee acquires by virtue of [their] employment . . . belongs to the employer." Cal. Lab. Code § 2860.

Plaintiff has submitted sufficient evidence to raise serious questions going to the merits as to whether the stylists engaged in impermissible solicitation when using telephone numbers provided to them in the course of their employment to contact Plaintiff's customers, and when explaining to Plaintiff's customers the benefits of the services provided by Elite Solutions.

B.  Balance of Hardships

Defendants argued at the hearing that the issuance of a preliminary injunction mirroring the TRO should not issue because it would impose significant hardship on Defendants. Defendants argued that an injunction would have a much more devastating impact on Defendants than denial would have on Plaintiff because it would cause Defendants to lose a significant portion of their clients. In

addition, Defendants assert an injunction would leave customers without a hair replacement stylist and that the customers should be permitted to remain with the stylists whom they have established a relationship. Plaintiff rejoins it will lose over $65,000 in annual revenue from the loss of these customers who are now receiving services at Elite. (Pl.'s Reply at 10:6-8.)

Although Plaintiff has presented some evidence of the hardship it will sustain if an injunction prohibiting Defendants from servicing those customers allegedly improperly solicited is denied, Plaintiff has not shown the balance of hardships on this matter "tips sharply in its favor." Therefore, this portion of Plaintiff's motion for a preliminary injunction is denied.

However, Plaintiff has shown it faces great hardships if Defendants are not enjoined from "continued illegal solicitation of both stylists and customers." (Pl.'s Reply at 10:9-11.) Plaintiff's argument that this solicitation "will further affect the financial stability and viability of the Sacramento facility, and [that] a failure of that facility will have a detrimental affect on the good will of the Company as a whole" is persuasive. (Id.) Defendants do not counter Plaintiff on these points. Defendants have not shown that they would suffer hardship if they were enjoined from initiating contact with Plaintiff's stylists and former customers.

III. Twenty Mile Radius

Eaton argues the provision prohibiting her from working as a hair replacement stylist within twenty miles of Plaintiff's business is an illegal restraint on trade and therefore, unenforceable under California law. (Defs.' Opp'n at 9:18-19.) Plaintiff asserts

1 covenants not to compete are enforceable to protect the employer's
2 trade secrets.  (Pl.'s Mot. at 13:21-26.)
3     The general rule in California is that "every contract by
4 which anyone is restrained from engaging in a lawful profession,
5 trade, or business of any kind is to that extent void."  Cal. Bus. &
6 Prof. Code § 16600 ("Section 16600").  "[Section 16600] invalidates
7 provisions in employment contracts prohibiting an employee from
8 working for a competitor after completion of his employment or
9 imposing a penalty if he does so, unless they are necessary to protect
10 the employer's trade secrets."  D'Sa v. Playhut, 85 Cal. App. 4th 927,
11 934 (2000).
12     Both parties agree the clause prohibiting Eaton from
13 competing with Plaintiff's business is a restraint on her ability to
14 engage in her profession.  At issue is whether it is an impermissible
15 restraint on trade or whether it is necessary to protect Plaintiff's
16 trade secrets.  At the hearing, Plaintiff argued enforcement of the
17 twenty mile radius was necessary to protect Plaintiff's trade secrets
18 because it prevented Eaton from impermissibly soliciting Plaintiff's
19 customers.  Plaintiff further argued enforcement was necessary to
20 protect Plaintiff from competition.
21     Narrow restraints which prohibit employees "from using
22 confidential information taken from the former employer, have been
23 held to be lawful."  Kolani v. Gluska, 64 Cal. App. 4th 402, 407
24 (1998).  However, "an outright prohibition on competition . . . is
25 void."  Id.  Plaintiff has not shown the twenty mile radius provision
26 is necessary to protect its trade secrets and therefore, this portion
27 of Plaintiff's motion for a preliminary injunction is denied.  See Id.
28 (holding that a forty mile prohibition on the employee competing with

7

the employer was not necessary to prevent misappropriation of customer information and was unenforceable).

## IV. Injunction

Defendants argued at the preliminary injunction hearing that if a preliminary injunction issues, it should be narrow and specific in its terms.  Since, Plaintiff has raised serious questions going to the merits and has shown that the balance sharply tips in its favor, the following preliminary injunction issues:

(a)  Ms. Eaton and any of her agents, servants, employees and attorneys, and all those persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise are enjoined from:

(i)  Initiating telephonic contact with any current Hair Club customers or stylists with whom Defendants worked or learned of during the course of their employment with Hair Club for the purpose of purchasing or obtaining products, services or licenses related to Hair Club's business, other than for or on behalf of Hair Club;

(ii) Directly or indirectly revealing, disclosing or publishing, or authorizing anyone else to reveal, disclose or publish Hair Club's client lists and lead lists to any person, firm, corporation or other entity, or directly or indirectly using, or authorizing anyone else to use, this information for any reason or purpose whatsoever, other than as expressly authorized by Hair Club; and retaining possession of originals or copies of documents and/or records of any nature in her possession, custody or control which belong to Hair Club or relate to Hair Club's client lists and lead lists, whether or not such information was produced by her own efforts.

(b) Ms. Moskal and any of her agents, servants, employees and attorneys, and all those persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise are enjoined from:

(i) Initiating telephonic contact with any current Hair Club customers or stylists with whom Defendants worked or learned of during the course of their employment with Hair Club for the purpose of purchasing or obtaining, services or licenses related to Hair Club's business, other than for or on behalf of Hair Club;

(ii) Directly or indirectly revealing, disclosing or publishing, or authorizing anyone else to reveal, disclose or publish Hair Club's client lists and lead lists to any person, firm, corporation or other entity, or directly or indirectly using, or authorizing anyone else to use, this information for any reason or purpose whatsoever, other than as expressly authorized by Hair Club and retaining possession of originals or copies of documents and/or records of any nature in her possession, custody or control which belong to Hair Club or relate to Hair Club's client lists and lead lists, whether or not such information was produced by her own efforts.

(c) Elite Solutions and any of its officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise are enjoined from:

(i) Directly or indirectly revealing, disclosing or publishing, or authorizing anyone else to reveal, disclose or publish Hair Club's client lists and lead lists to any person, firm, corporation or other entity, or directly or indirectly using, or

1 | authorizing anyone else to use, this information for any reason or
2 | purpose whatsoever, other than as expressly authorized by Hair Club.
3 |       Hair Club has posted a corporate surety bond in the amount
4 | of $10,000 as security for the payment of such damages as any person
5 | may be entitled to recover as a result of a wrongful restraint
6 | hereunder.
7 |       IT IS SO ORDERED.
8 | Dated:  April 5, 2007

_____
GARLAND E. BURRELL, JR.
United States District Judge